**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL I. SPURLOCK,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-404
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Michael I. Spurlock brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum. (Doc. 18).

**I. Procedural Background**

Plaintiff filed his applications for DIB and SSI in July 2011, alleging disability since October 1, 2011,[1] due to reflex sympathetic dystrophy (RSD) and depression. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a video hearing before administrative law judge ("ALJ") Lorenzo Level on January 8, 2013. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On July 10, 2013, ALJ Level issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied.

---

[1] Plaintiff initially claimed an alleged onset date of disability of September 1, 2006.

Plaintiff then filed an action in the United States District Court. *See Spurlock v. Commissioner of Social Security*, 1:14-cv-990 (S.D. Ohio). This Court remanded plaintiff's claim pursuant to Sentence Four of 42 U.S.C. § 405(g) with instructions to the ALJ to re-weigh the medical and other opinion evidence in accordance with the Court's decision; to reconsider plaintiff's RFC; and to further develop the medical and vocational evidence as warranted. (Tr. 652-74).

The Appeals Council subsequently vacated and remanded ALJ Level's decision. (Tr. 679). Plaintiff and a vocational expert appeared and testified at a subsequent administrative hearing before ALJ Elizabeth Motta on June 15, 2016. (Tr. 591-621).[2] On August 11, 2016, ALJ Motta issued a decision denying plaintiff's DIB and SSI applications, determining that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 523-41). Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Motta the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

---

[2] In the second ALJ hearing, plaintiff appears to have claimed an alleged onset date of September 1, 2006, which was the alleged onset date prior to the amended onset date asserted at the first hearing.

2

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

ALJ Motta applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through March 31, 2014.

3

2. The [plaintiff] has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: lumbar degenerative disc disease, history of plantar fasciitis, reflex sympathetic dystrophy (RSD) and/or chronic pain disorder, depressive disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b): lift and carry up to 20 pounds occasionally or 10 pounds frequently; stand and/or walk for approximately 4 hours in an 8-hour workday; occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders[,] ropes, or scaffolds; no exposure to hazards such as dangerous machinery, unprotected heights, or driving as part of job duties; no concentrated exposure to extremes of cold, heat, wetness or humidity; no significant exposure to vibration, essentially jobs not requiring tasks involving vibration; simple, repetitive tasks; low stress with no strict production quotas or fast pace and only routine work with few changes in the work setting; and only occasional contact with the public, coworkers, and supervisors.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1965 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[3] Plaintiff has past relevant work as a material handler, warehouse worker, and forklift operator. (Tr. 539, 615).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 526-41).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of unskilled jobs in the national economy at a light exertional level, such as warehouse checker (60,000 jobs nationally), marker (45,000 jobs nationally), and mail clerk (89,000 jobs nationally). The ALJ also found that plaintiff would be able to perform the requirements of unskilled jobs in the national economy at a sedentary exertional level, including charge account clerk (40,000 jobs nationally), bench assembler (75,000 jobs nationally), and weight tester (2,800 jobs nationally). (Tr. 540, 616-17).

5

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Specific Errors

On appeal, plaintiff argues that the ALJ erred by failing to give controlling weight to treating psychologist Dr. Schroder's opinions and by not providing good reasons for rejecting his opinions. (Docs. 12, 18).

### 1. Whether the ALJ properly weighed Dr. Schroder's opinions

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Medical opinions from treating sources are generally afforded more weight than those from non-treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

6

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must weigh the factors specified in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to decide what weight to give the opinion; specifically, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Gayheart*, 710 F.3d at 376. *See also Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 (6th Cir. 2018) (citing *Wilson*, 378 F.3d at 544); *Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[(c)]"). The ALJ's decision "must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). This requirement serves two purposes: (1) "it helps a claimant to understand the disposition of [his] case, especially 'where a claimant knows that his physician has deemed him disabled,'" and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Shields*, 732 F. App'x at 438 (citing *Wilson*, 378 F.3d at 544). The Sixth Circuit has made clear that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and when the ALJ has not "comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (emphasis added).

On January 4, 2013, plaintiff's treating psychologist, Dr. Mark Schroder, Psy.D., completed a Mental Impairment Questionnaire. (Tr. 488-92). Dr. Schroder listed plaintiff's symptoms as poor memory, sleep disturbance, mood disturbance, panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation, difficulty thinking or concentrating, suicidal ideation, social withdrawal or isolation, and generalized persistent anxiety. (Tr. 488). Dr. Schroder reported that plaintiff presented as "extremely anxious – easily overwhelmed – and depressed." (*Id.*). According to Dr. Schroder, plaintiff was not making any progress. (Tr. 489). Dr. Schroder opined that plaintiff would be absent from work more than three times a month due to his impairments or treatment. (Tr. 490). Dr. Schroder also opined that plaintiff was seriously limited in his ability to remember work like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and work week without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*). He also assessed that plaintiff had no useful ability to maintain attention for two-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (*Id.*). In support of these limitations, Dr. Schroder reported that his observations were clinically based and that plaintiff "is consistently extremely anxious." (Tr. 491). Dr. Schroder then opined that plaintiff suffered from extreme limitations in activities of daily living, a marked difficulty in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace. (*Id.*).

8

Dr. Schroder wrote narrative letters on plaintiff's condition in April 2013 and September 2013. (Tr. 992, 996). In April 2013, Dr. Schroder reported that he met with plaintiff for the twelfth time since September 2012. (Tr. 996). Dr. Schroder indicated that plaintiff's situation remained "unchanged," and plaintiff appeared exhausted and complained of poor memory and significant levels of distractibility. (*Id.*). Dr. Schroder stated that plaintiff's depression remained unchanged, as he could not afford the cost of anti-depressant medication in addition to other medications. (*Id.*). Dr. Schroder described plaintiff as socially isolated, with the exception of being able to interact with his two young adult children. (*Id.*). In September 2013, Dr. Schroder wrote that he recently met with plaintiff for a sixteenth time since September 2012 for treatment of depression. (Tr. 992). Dr. Schroder reported that plaintiff "faces a number of formidable physical, emotional, social, and financial challenges." (*Id.*). Dr. Schroder indicated that plaintiff reports high levels of pain, lack of sleep, exhaustion, poor memory, and distractibility. (*Id.*). Dr. Schroder explained that plaintiff "becomes extremely anxious in new situations and shuts down." (*Id.*). Dr. Schroder stated that plaintiff's depression had been "intractable" but was helped in the past with Cymbalta, which plaintiff discontinued due to cost. (*Id.*).

Dr. Schroder submitted a follow-up narrative letter on March 21, 2016. (Tr. 1447). Dr. Schroder reported that except for the months of April and May 2013, he generally met with plaintiff once a month for a total of 14 (50 minute) sessions. (*Id.*). However, in January 2014, plaintiff cancelled his two appointments, reporting at least once that his car would not start. (*Id.*). Dr. Schroder had no further contact with plaintiff until early 2016 when he reported suicidal ideation to his medical pain specialist. (*Id.*). Dr. Schroder met with plaintiff three times and had an additional scheduled appointment as of the date of the March 2016 narrative. (*Id.*). Dr. Schroder noted that plaintiff's "presentation [was] at best unchanged, but more likely

9

worsened, since January 2013." (*Id.*). Dr. Schroder noted that during a recent visit, plaintiff was unable to remember his age but later remembered his birth date during the session. (*Id.*). Dr. Schroder reported that it was "difficult to separate his depression from the pain associated with Reflex Sympathetic Dystrophy Disease (RSD—which emerged during his twenties) along with exhaustion (due to chronically disrupted sleep) and his dire financial circumstances, lack of access to psychiatric care and extreme social isolation." (*Id.*). Dr. Schroder reported that "there is no indication he has experienced any relief from his psychiatric or physical symptoms over the last several years." (*Id.*). Dr. Schroder noted that upon returning to treatment, plaintiff was tearful and crying heavily. (*Id.*). Plaintiff reported that he hears "things" routinely and rarely leaves the house. (*Id.*). Dr. Schroder noted that plaintiff's depression may improve with medication, which he had been unable to afford since 2012. (*Id.*). Dr. Schroder further noted that plaintiff's primary diagnosis remained major depressive disorder, severe, with associated anxiety. (*Id.*).

The ALJ re-evaluated Dr. Schroder's opinions pursuant to this Court's remand order and assigned them "little weight." (Tr. 538). The ALJ determined that Dr. Schroder's treating source opinions were not entitled to controlling or deferential weight under the regulations. (*Id.*). The ALJ noted that Dr. Schroder's statements in the narrative letters were "somewhat vague and do not provide an opinion on the [plaintiff]'s work-related abilities." (*Id.*). The ALJ explained that although Dr. Schroder was plaintiff's treating psychologist since September 2012, there was a "significant treatment gap between December 2013 and January 2016." (*Id.*). The ALJ further explained that Dr. Schroder's opinions were "unsupported by objective findings in the mental health records," which consistently documented that plaintiff presented with logical thought processes and cooperative behavior. (*Id.*). The ALJ also discounted Dr. Schroder's opinions on

10

the basis that they relied "quite heavily on the subjective report of symptoms and limitations provided by the [plaintiff], as well as formal testing involving the [plaintiff]'s self-reports, and seemed to uncritically accept as true most, if not all, of what the [plaintiff] reported." (*Id.*).

Plaintiff argues that the ALJ's decision, for the second time, failed to provide good reasons for not affording Dr. Schroder's treating source opinions controlling weight. (Doc. 12 at 7). Plaintiff argues that the evidence cited by the ALJ does not support the ALJ's conclusion that Dr. Schroder's opinions were inconsistent with his own treatment notes. (*Id.* at 9). Plaintiff contends that the ALJ's "broad citations" to Exhibits 6F and 11F in the record "do not reveal the true nature of Dr. Schroder's treatment notes." (*Id.*). Plaintiff argues that Dr. Schroder's treatment notes document significant mental health limitations, including repeated issues with depression, anxiety, pain, suicidal ideation with a plan, tearful episodes, sleep disturbance, worthlessness, and distractibility. (*Id.* at 10) (citing Tr. 976, 983-85, 987, 990, 993, 997-99). Plaintiff maintains that Dr. Schroder rendered his opinions based on his own expertise as a mental health specialist, treatment of plaintiff, and clinical observations, rather than merely crediting plaintiff's subjective complaints. (*Id.*). Plaintiff contends that the ALJ's reliance on the gap in medical treatment is not a good reason for discounting Dr. Schroder's opinions and according greater weight to the state agency non-examining psychologists who provided opinions in 2011 and 2012 without the benefit of the whole record. (*Id.* at 11) (citing Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). Plaintiff also argues that Dr. Schroder's opinions were consistent with the opinion of consultative examiner Dr. Kevin Corbus. (*Id.* at 12).

In response, the Commissioner argues that the ALJ properly declined to give Dr. Schroder's opinions controlling weight. (Doc. 17 at 7-8). The Commissioner contends that "Dr.

11

Shroder [sic] declined to provide sufficient rationale for reaching the simple, check-mark conclusions contained within the Shroder [sic] Opinion, and the general, conclusory statements in the April Letter, September Letter, and March Letter." (*Id.* at 8). The Commissioner argues that the ALJ properly concluded that Dr. Schroder's opinions were unsupported by the record, including Dr. Schroder's own clinical findings that documented plaintiff's cooperative behavior and logical thought processes and other benign findings throughout the record. (*Id.* at 11, 15). The Commissioner further argues that plaintiff fails to explain how granting more weight to Dr. Schroder's opinions would have impacted the RFC, which accounted for plaintiff's social isolation and difficulties with maintaining concentration, persistence, and pace. (*Id.* at 16).

The ALJ's decision to discount Dr. Schroder's opinions is again without substantial support in the record. While the ALJ properly mentioned the concept of "controlling weight" and recognized that Dr. Schroder was plaintiff's treating psychologist when analyzing Dr. Schroder's opinions, the ALJ's conclusion that Dr. Schroder's opinions were "unsupported by objective findings in the mental health records" is contradicted by the record, including Dr. Schroder's own treatment notes. The Court agrees with plaintiff that the ALJ's "broad citations" to Dr. Schroder's treatment notes do not reveal the true nature of his clinical findings.

In the psychiatric context, objective medical evidence consists of laboratory findings and medical signs, 20 C.F.R. §§ 404.1512(b), 416.912(b), which are defined under 20 C.F.R. §§ 404.1528(b), 416.928(b) as "psychological abnormalities which can be observed, apart from your statements (symptoms)" and which "must be shown by medically acceptable clinical diagnostic techniques."[5] *Parr v. Colvin*, No. 1:13-cv-31, 2014 WL 301043, at *6 n.1 (S.D. Ohio Jan. 28, 2014) (Report and Recommendation), *adopted sub nom. Parr v. Comm'r of Soc. Sec.*,

---

[5] Sections 416.912(b), 416.928(b), 404.1512(b), and 404.1528(b) were modified effective March 17, 2017. The prior regulations were in effect when the ALJ issued his decision in this case and apply here.

2014 WL 656774 (S.D. Ohio Feb. 19, 2014). "[S]igns are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception," which must "be shown by observable facts that can be medically described and evaluated." 20 C.F.R. §§ 404.1528(b), 416.928(b); *Parr*, 2014 WL 301043, at *6 n.1. Laboratory findings include "psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques," such as psychological tests. 20 C.F.R. §§ 404.1528(c), 416.928(c). "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology," whose findings should not be rejected simply because of the "relative imprecision of the psychiatric methodology." *Parr*, 2014 WL 301043, at *6.

Dr. Schroder's opinions are supported by the clinical findings set forth in his treatment records. At the time Dr. Schroder rendered his assessment in January 2013, plaintiff had seen Dr. Schroder six times since beginning treatment in September 2012. (Tr. 415-24). At his initial examination with Dr. Schroder, plaintiff reported he was depressed, anxious, withdrawn, and forgetful. He wanted to "learn how to fight depression." (Tr. 420). Clinically, plaintiff was cooperative, but withdrawn; his thought processes were "forgetful"; his affect was congruent; and his mood was anhedonic, anxious, depressed, and "easily overwhelmed." (*Id.*). Dr. Schroder diagnosed plaintiff with major depressive disorder, severe with associated anxiety, and rule out mood disorder due to his general medical condition with depressive features. (*Id.*). Plaintiff saw Dr. Schroder six times over the subsequent four-month period. (Tr. 415-19). Dr. Schroder noted that plaintiff consistently presented with a tearful appearance, sleep disturbances, distractible thought processes with memory complaints, agitated behavior, congruent affect, and

13

anhedonic, anxious and depressed moods. (*Id.*). Dr. Schroder noted that plaintiff reported being isolated and having very little social support. (Tr. 415, 417, 419). When last seen on December 4, 2012, plaintiff was positive for suicidal ideation. (Tr. 415). Dr. Schroder noted that plaintiff's condition was not improving. (Tr. 415-19). Dr. Schroder also rated plaintiff's "current level of difficulty" as "quite a bit" (a level three on a zero to four-point scale with four rated as "extreme") and rated both short-term and long-term progress as a four or a five on a ten-point scale with ten being most improving. (*Id.*).

In his September 2013 letter, Dr. Schroder noted that he had met with plaintiff sixteen times since the start of treatment in September 2012. During appointments throughout 2013, Dr. Schroder consistently noted that plaintiff's progress remained unchanged. Dr. Schroder consistently documented plaintiff's mood as depressed, anxious, worthless and sad, with an affect that was congruent with mood and thought. (January 2013—Tr. 1003; February 2013—Tr. 1002; March 2013—Tr. 1001; April 2013—Tr. 999; April 2013—Tr. 998). In July 2013, Dr. Schroder's clinical notes documented that plaintiff's progress had worsened, and plaintiff continued to have a depressed and anxious mood. (Tr. 997). Dr. Schroder reported that plaintiff was tearful and had suicidal ideations. (*Id.*). Thereafter, plaintiff's progress remained unchanged, and Dr. Schroder continually documented plaintiff's mood as depressed, anxious, and fearful. (August 2013—Tr. 995; September 2013—Tr. 993; September 2013—Tr. 990; October 2013—987; November 2013—Tr. 985; November 2013—Tr. 984, December 2013—Tr. 983). When plaintiff returned to Dr. Schroder in January 2016, he reported suicidal ideation. (Tr. 981). During two visits in January 2016, Dr. Schroder noted that plaintiff's behaviors were cooperative, tearful, and verbal, but his mood remained depressed, anxious, and worthless, with a congruent affect. (Tr. 979, 981). In March 2016, plaintiff presented as disheveled with poor

14

hygiene; tearful and sad; his thought content was suspicious; and his thought processes were distractible. (Tr. 976). Dr. Schroder assessed major depressive disorder. (*Id.*). The ALJ discounted Dr. Schroder's opinion as inconsistent with the record because plaintiff consistently presented to Dr. Schroder with logical thought processes and cooperative behavior. (Tr. 538). However, such evidence fails to create a "logical bridge" to negate the findings of Dr. Schroder, a trained psychologist who treated plaintiff regularly for over a one-year period, who consistently documented plaintiff's mental condition as depressed, anxious, and unchanged. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (ALJ must "build an accurate and logical bridge between the evidence and the result"). A comprehensive review of Dr. Schroder's records outlined above shows that his mental status examinations and clinical findings were consistent with the limitations assessed in his January 2013 assessment and April 2013, September 2013, and March 2016 narrative letters.

Dr. Schroder's opinions also appear to be consistent with the medical sources who examined plaintiff to assess his psychological functioning. Dr. Kevin Corbus, Psy.D., conducted a consultative examination at the request of the state agency on October 1, 2011. (Tr. 391-396). Dr. Corbus listed plaintiff's diagnosis as major depressive disorder and anxiety disorder. (Tr. 395). During the mental status evaluation, Dr. Corbus noted that plaintiff had a depressed mood and affect, slowed psychomotor activity, and recent suicidal ideation. (Tr. 393). Plaintiff also demonstrated motor manifestations of anxiety, including shaking, twitching, and racing thoughts. (Tr. 394). Plaintiff reported that he had low energy, no interest in activities, cried at times, did not have hope for the future, and felt anxious several times throughout the day. (Tr. 393-94). Dr. Corbus opined that due to plaintiff's fleeting ability to concentrate, he may exhibit a slower work pace than peers on tasks requiring rapid timed performance. (Tr. 395). Dr. Corbus also

15

opined that plaintiff was "somewhat likely to show a pattern of periods of time away from work due to mental health issues." (*Id.*). Similarly, plaintiff presented to Dr. Mei Wang, Ph.D., on March 14, 2016 for a psychological pain evaluation upon the recommendation of his pain management physician. (Tr. 1546-49). During the objective portion of the emotional status examination, plaintiff had a restricted affect and depressed mood. (Tr. 1547). He was very anxious and visibly shaking throughout the session. (*Id.*). Dr. Wang's psychological testing revealed that plaintiff had severe depression, severe anxiety, and suicidal thoughts and wishes. (Tr. 1548). Dr. Wang highly recommended "urgent professional attention." (*Id.*). Thus, these clinical findings by the evaluating psychologists do not support the ALJ's conclusion that Dr. Schroder's opinions were "unsupported by objective findings in the mental health records." (Tr. 538).

The ALJ also erred in summarily discounting Dr. Schroder's opinions on the basis that he relied heavily on plaintiff's subjective reports and symptoms and limitations and seemed to "uncritically accept" most of what plaintiff reported. In the January 2013 assessment, when asked to describe clinical findings such as results of mental status examinations that demonstrate the severity of plaintiff's mental impairments, Dr. Schroder indicated that after six visits, plaintiff presented as extremely anxious, easily overwhelmed, and depressed. (Tr. 488). Dr. Schroder noted that his observations were "clinically based" and that plaintiff was "consistently extremely anxious." (Tr. 491). While Dr. Schroder did cite some of plaintiff's self-reported symptoms in his April 2013, September 2013, and March 2016 narrative letters, Dr. Schroder documented his own observations that plaintiff's mental health issues persisted. (*See* Tr. 992, 996, 1447). The Court notes that the ALJ appropriately considered plaintiff's two-year gap in treatment between January 2014 and January 2016. *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x

16

431 (6th Cir. 2012) (gap in treatment is a sufficient reason for discounting treating physician's opinion). However, the Court finds that the gap in treatment between 2014 and 2016 is not a sufficient reason to discount Dr. Schroder's opinions that pre-dated the gap in treatment, including the January 2013 assessment, as well as his April and September 2013 letters, the latter revealing that plaintiff's progress remained unchanged and his depression remained "intractable" after sixteen visits. (*See* Tr. 992—September 2013 narrative letter).

Finally, the ALJ's decision does not reflect that she conducted a proper review of the regulatory factors in assessing the weight to afford Dr. Schroder's opinions. Even if Dr. Schroder's opinion may not have been entitled to controlling weight, the ALJ was still obligated to consider the length, nature and extent of his treatment relationship with plaintiff; the frequency of examination; his medical specialty; the evidentiary support for the opinion and its consistency with the record; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In particular, the Court finds it significant that the ALJ failed to consider Dr. Schroder's specialization in mental health and psychology and instead heavily relied on the "normal mental status findings documented through the pain management progress notes" to discount Dr. Schroder's clinical findings. (Tr. 538).

Overall, the Court concludes that this is not a case of harmless error where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. Because the ALJ failed to give good reasons for giving the treating psychologist's opinions "little weight," the ALJ's rejection of Dr. Schroder's opinions is not supported by substantial evidence. Accordingly, plaintiff's assignment of error should be sustained.

### III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). There is an issue as to the onset date of plaintiff's mental health impairments and how those impairments, in combination with plaintiff's other impairments, affect plaintiff's ability to perform substantial gainful activity. While plaintiff alleges an onset date of disability of September 1, 2006, it does not appear that plaintiff was evaluated and/or sought mental health treatment until well after the alleged onset date. In addition, there is an unexplained two-year gap, from 2014 to January 2016, in plaintiff's mental health treatment that may affect his claim for benefits. Therefore, this matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical opinion evidence in accordance with this decision; to reassess plaintiff's RFC, giving appropriate weight to the opinions of Dr. Schroder, including an explanation on the record for the weight afforded to his opinions; for further medical and vocational evidence as warranted; and for an evaluation of plaintiff's onset date of disability, if any, considering the medical evidence of plaintiff's mental impairments and the two-year gap in mental health treatment.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 7/25/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MICHAEL I. SPURLOCK,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-404
Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).